UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> MICHELLE HIGSON, <br><br> Defendant | Criminal No. 18cr10433 <br><br> Violations: <br><br> Counts One Through Four: Bank Fraud (18 U.S.C. §§ 1344 and 2) <br><br> Forfeiture Allegation: (18 U.S.C. § 981(a)(2)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.  Defendant Michelle Higson ("HIGSON") was an individual who resided in Georgetown, Massachusetts.

2.  Company A ("Company A") was an event planning and design company serving the greater New England area. Its headquarters was located in Wilmington, Massachusetts.

3.  G.G. and A.W. owned Company A.

4.  Company A maintained a bank account ending in *7910 at Santander, N.A. ("Santander"). Only G.G. and A.W. had signatory authority over this account.

5.  From in or around August 2013 to in or around June 2018, HIGSON was employed at Company A and served as its bookkeeper. She was paid an hourly rate of $20.00.

6.  HIGSON's duties and responsibilities as bookkeeper included management of Company A's accounts payable, payroll, and accounts receivable. These duties and

1

responsibilities required her, among other things, to prepare and print out Company A checks to be presented to G.G. or A.W. for signature. No other employee had authority to sign Company A checks.

7. To accomplish her duties, HIGSON had access to Company A's accounting software program, which HIGSON used to maintain Company A's accounts payable and other records.

8. The account ending in *1915 at TD Bank is in the name of HIGSON's husband. In or around March 2016, HIGSON opened an account in her name ending in *0000 at Align Credit Union.

9. Santander, Align Credit Union, and TD Bank were financial institutions as defined in 18 U.S.C. § 20.

## Scheme to Defraud

10. Beginning in or around at least February 2015, and continuing through in or around June 2018, HIGSON engaged in a scheme and artifice to defraud and to obtain money, funds, and property of Company A which was in the custody and control of Santander, by means of materially false and fraudulent pretenses and representations.

11. On numerous occasions during the scheme, HIGSON printed Company A checks made payable to herself or her husband. She cashed some of the checks and deposited some of the checks into her personal Align Credit Union account ending in *0000 and her husband's TD Bank account ending in *1915. All of these fraudulently procured checks bore the forged signature of G.G.

12. HIGSON stole Company A checks and caused them to be presented for payment with G.G.'s forged signature on said checks as follows: in 2015, 23 checks for a total of $76,367.79; in 2016, 40 checks for a total of $148,991.67; in 2017, 36 checks for a total of $146,771.55; and in 2018, 12 checks for a total of $41,735.00.

13. In an effort to conceal her theft and in furtherance of the scheme, HIGSON entered false and fraudulent information into Company A's accounting software program. Specifically, HIGSON created fake vendor entries in the accounting software program in order to give the appearance that the checks she issued to herself and her husband had actually been used to satisfy legitimate payment obligations to vendors. HIGSON sometimes falsely entered the names of bonafide vendors and sometimes falsely entered the names of fictitious vendors to cover up her theft.

14. Also as part of the scheme, HIGSON manipulated the data in the accounting software program to reflect a higher hourly wage for herself than the $20.00 per hour authorized by G.G. and A.W. Specifically, on two occasions in 2016 and eight occasions in 2018, HIGSON falsely inflated her hourly rate to $25.00; and on four occasions in 2018, she falsely inflated her hourly rate to $30.00. By manipulating the payroll data in this fashion, HIGSON was able to steal at least an additional $4,571.59 from Company A.

15. Also as part of the scheme, on two occasions, HIGSON manipulated the data in the accounting software program to falsely reflect that she had worked more than 40 hours per week. By manipulating the payroll data in this fashion, HIGSON was able to steal at least an additional $592.50 from Company A.

16.     Over the course of the scheme, HIGSON stole more than 100 Company A checks, which were presented for payment with G.G.'s forged signature thereon, and caused at least 16 Company A payroll checks to issue in her name for more money than she had actually earned. HIGSON cashed certain of the stolen and forged checks in an amount totaling at least $43,403.20, and the remainder were deposited into the Align Credit Union and TD Bank accounts in an amount totaling at least $370,462.01.

## COUNTS ONE THROUGH FOUR
## Bank Fraud
## (18 U.S.C. §§ 1344 and 2)

The Grand Jury charges that:

17. The Grand Jury re-alleges and incorporates by reference paragraphs 1-16 of this Indictment as if fully set forth herein.

18. Between or about February 20, 2015 and on or about June 2, 2018, in the District of Massachusetts, the defendant,

MICHELLE HIGSON,

knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, that is, Santander, N.A., and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Santander, N.A., by means of materially false and fraudulent pretenses, representations, and promises, namely, manipulated payroll checks, and stole checks from Company A and caused them to be presented for payment with the forged signature of G.G., as set forth below:

| Count | Date Deposited | Description |
|---|---|---|
| 1 | February 20, 2015 | Company A check number 6474 in the amount of $3,806.00 |
| 2 | April 1, 2016 | Company A check number 7473 in the amount of $4,251.50 |
| 3 | December 21, 2017 | Company A check number 9399 in the amount of $4,851.00 |
| 4 | June 2, 2018 | Company A check number 9798 in the amount of $3,850.00 |

All in violation of Title 18, United States Code, Sections 1344 and 2.

## FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2))

The Grand Jury further finds that:

19. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1344 and 2, set forth in Counts One through Four of this Indictment, the defendant,

## MICHELLE HIGSON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense. The property to be forfeited includes, but is not limited to, the following assets:

    a. $419,030.10, to be entered in the form of a forfeiture money judgment.

20. If any of the property described in Paragraph 19, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

_____
FOREPERSON

_____
ANNE PARUTI
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: NOVEMBER 15, 2018
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK
HAROLD G PUTNAM
11/15/18 @ 2:41 pm